1   MARK C. FLEMING (*pro hac vice* forthcoming)        MARIE A.J. VINCENT (SBN 286240)
    WILMER CUTLER PICKERING                              PANGEA LEGAL SERVICES
2     HALE AND DORR LLP                                  350 Sansome St. #650
    60 State Street                                      San Francisco, CA  94104
3   Boston, MA  02109                                    Telephone: (415) 635-7187
    Telephone: (617) 526 6000                            marie@pangealegal.org
4   Facsimile: (617) 526 5000
    mark.fleming@wilmerhale.com
5
    ALEX HEMMER (*pro hac vice* forthcoming)
6   WILMER CUTLER PICKERING
      HALE AND DORR LLP
7   1875 Pennsylvania Ave. NW
    Washington, DC  20006
8   Telephone: (202) 663 6000
    Facsimile: (202) 663 6363
9   alex.hemmer@wilmerhale.com

10  *Attorneys for Plaintiff*

11              **UNITED STATES DISTRICT COURT**

12             **NORTHERN DISTRICT OF CALIFORNIA**

13                **SAN FRANCISCO DIVISION**

14                                                       Case No. 19-cv-3852

15  JOHN DOE,                                            **COMPLAINT FOR DECLARATORY AND
                                                         INJUNCTIVE RELIEF**
16                  *Plaintiff*,

17          v.                                           *Immigration Case*

18  KEVIN K. MCALEENAN, in his official                  *Administrative Procedure Act Case*
    capacity as Acting Secretary of Homeland
19  Security; U.S. DEPARTMENT OF
    HOMELAND SECURITY; KENNETH T.
20  CUCCINELLI, in his official capacity as Acting
    Director of U.S. Citizenship and Immigration
21  Services; RICHARD VALEIKA, in his official
    capacity as Field Office Director, San Francisco
22  Field Office, U.S. Citizenship and Immigration
    Services; and U.S. CITIZENSHIP AND
23  IMMIGRATION SERVICES,

24                  *Defendants*.

25

26                      **INTRODUCTION**

27          1.      Plaintiff John Doe brings this action under the Administrative Procedure Act

28  ("APA") against Defendants—the Secretary of Homeland Security, the Department of Homeland

    Security ("DHS"), the Director of U.S. Citizenship & Immigration Services ("USCIS"), and USCIS

itself—to challenge their unlawful refusal to process applications for permission to reapply for admission to the United States submitted pursuant to 8 U.S.C. § 1182(a)(9)(C)(ii) by noncitizens who are physically present in the United States pursuant to a grant of humanitarian parole.

2. Section 1182(a)(9)(C)(ii) authorizes a noncitizen who would otherwise be barred from applying for readmission to the United States *but* who has lived outside of the United States for over 10 years to seek the Secretary of Homeland Security's permission to reapply "prior to" the noncitizen's "attempt to be readmitted from a foreign contiguous territory."

3. Section 1182(a)(9)(C)(ii) says nothing about *where* a noncitizen has to be when he or she seeks the Secretary's permission to reapply; it simply requires that a noncitizen seek permission before "attempt[ing] to be readmitted." But the instructions for the form that USCIS requires such a noncitizen to use—Form I-212—improperly imposes a nonstatutory bright-line rule under which a noncitizen cannot seek such consent if he or she is "in the United States."

4. Because most people apply for admission to the United States from outside of the United States (or at the border), the difference between the statute's focus on "admission" to the United States and USCIS's focus on whether someone is "in the United States" will often not matter. But it does matter for Plaintiff and noncitizens who, like him, are allowed to be physically present in the United States pursuant to a grant of humanitarian parole, but who have *not* sought ***admission*** to the United States.

5. Plaintiff was removed from the United States in 2003 and briefly re-entered later that year, rendering him inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i) absent the Secretary's consent to reapply for admission. He lived for over a decade in Mexico, but left in 2014, after his son was shot by a cartel that threatened to kill Plaintiff and his family. Plaintiff presented himself to a border official and applied for asylum, was found to have a credible fear of future persecution or torture, and was granted humanitarian parole so that he could remain in the United States while his asylum claim was pending. He did not then seek admission in any nonimmigrant or immigrant visa status.

6. Plaintiff's wife is a lawful permanent resident of the United States ("LPR"), and two of his children are United States citizens. After Plaintiff was paroled into the United States, his U.S.

citizen daughter filed a family-based petition on his behalf, which USCIS approved.  Plaintiff thus now has a path to LPR status in the United States separate and apart from his asylum claim.

7.      In order to obtain LPR status pursuant to his daughter's petition, Plaintiff must show that he is admissible to the United States.  8 U.S.C. § 1255(a). For someone in Plaintiff's position, that means requesting and receiving the Secretary of Homeland Security's permission to reapply for admission into the United States pursuant to Section 1182(a)(9)(C)(ii).  Plaintiff submitted such a request on USCIS's designated form, Form I-212.

8.      USCIS denied Plaintiff's application.  The agency stated that the instructions for Form I-212 provide that a noncitizen "may not file an application for consent to reapply" if he is "in the United States," and so rejected Plaintiff's application on the ground that he was physically present in the United States.  The agency did not cite any statutory basis for its requirement that an applicant for permission to apply for readmission cannot be "in the United States."

9.      The agency's decision, and the form instructions on which it relies, are contrary to law.  The relevant statute requires only that a noncitizen seek permission to reapply before he or she "attempt[s] to be readmitted" to the United States.  8 U.S.C. § 1182(a)(9)(C)(ii).  The agency has thus improperly engrafted a physical-presence requirement that is found nowhere in the statute.

10.     This Court should order USCIS to follow the statute and process Plaintiff's I-212 application.  Plaintiff respectfully asks the Court to declare Defendants' conduct unlawful; to vacate their decision denying his application; and to enter an order requiring them to process his application for permission to reapply for admission to the United States, so that he may obtain lawful status and live with his family.

**JURISDICTION AND VENUE**

11.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).  Plaintiff seeks vacatur as well as injunctive and declaratory relief pursuant to the APA, 5 U.S.C. §§ 701 *et seq.*  The APA operates as a waiver of the United States's sovereign immunity.  *See Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989).

12.     Venue is proper in this Court under 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

13.     Intradistrict assignment is proper in the San Francisco Division because a substantial part of the events or omissions giving rise to the claim occurred in San Francisco County.

14.     Plaintiff has exhausted all administrative remedies available to him by appealing the District Office's decision to the USCIS Administrative Appeals Office ("AAO").

**PARTIES**

15.     Plaintiff John Doe is a 52-year-old Mexican citizen currently living with his family in Novato, California.  Plaintiff is married and has four children.

16.     Defendant DHS is a cabinet-level department of the U.S. government.  Its components include USCIS, Customs & Border Protection ("CBP"), and Immigration and Customs Enforcement ("ICE").  DHS is responsible for the administration of the Immigration & Nationality Act ("INA").

17.     Defendant Kevin J. McAleenan is the Acting Secretary of Homeland Security and is sued in his official capacity.  Acting Secretary McAleenan is responsible for the management and administration of DHS and the supervision of all of its employees.

18.     Defendant USCIS is a federal agency and a component of DHS.  Its responsibilities include the adjudication of requests for immigration benefits.

19.     Defendant Kenneth T. Cuccinelli is the Acting Director of USCIS and is sued in his official capacity.  Acting Director Cuccinelli is responsible for the management and administration of USCIS and the supervision of all of its employees.

20.     Defendant Richard Valeika is the Field Office Director of USCIS's San Francisco Field Office and is sued in his official capacity.  Director Valeika is responsible for the management and administration of USCIS's San Francisco Field Office and the supervision of its employees.

**FACTUAL ALLEGATIONS**

**I.      The Statutory and Regulatory Scheme**

21.     The INA establishes a number of paths by which a noncitizen may be admitted to the United States.  *See* 8 U.S.C. § 1181 (immigrant admissions); *id.* § 1184 (nonimmigrant admissions). As relevant here, a noncitizen may apply to adjust his or her status "to that of an alien lawfully

admitted for permanent residence" if, among other things, there is an immigrant visa available and he or she is not inadmissible. *Id.* § 1255(a).

22.   Such a noncitizen may be able to obtain an immigrant visa based on a qualifying relationship with a U.S. citizen or a lawful permanent resident, *see id.* § 1153(a); based on his or her employment status, *see id.* § 1153(b); or depending on his or her country of residence, subject to a lottery, *see id.* § 1153(c).

23.   In order to obtain admission as an immigrant to the United States, however, such a person must also establish that he or she is not *inadmissible* on any of various grounds. *Id.* § 1182(a) ("[A]liens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States ….").

24.   One such inadmissibility ground is a noncitizen's prior unlawful presence in the United States and subsequent re-entry without inspection. Among other things, the INA provides that a noncitizen who has been "unlawfully present in the United States for an aggregate period of more than 1 year" and who "enters or attempts to reenter the United States without being admitted is inadmissible." *Id.* § 1182(a)(9)(C)(i).

25.   But the INA provides that this inadmissibility ground shall not apply where "the Secretary of Homeland Security has consented to the alien's" reapplying for admission "prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory." *Id.* § 1182(a)(9)(C)(ii).

26.   "Admission" carries a specific meaning in the context of the immigration statutes. The INA specifically states that "[t]he terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). *See Hing Sum v. Holder*, 602 F.3d 1092, 1100-1101 (9th Cir. 2010) (describing the evolution of this statutory term).

27.   The fact that a noncitizen is physically present in the United States does not mean that he or she has been "admitted," as defined in Section 1101(a)(13)(A), nor that he or she has "attempt[ed] to be readmitted," as that term is used in Section 1182(a)(9)(C)(ii).

28.     For instance, and as relevant here, the statute authorizes the Attorney General to "parole [noncitizens] into the United States temporarily under such conditions as he may prescribe … on a case-by-case basis for urgent humanitarian reasons." *Id.* § 1182(d)(5)(A).  The statute explicitly states, however, that "such parole … ***shall not be regarded as an admission***." *Id.* (emphasis added).

29.     Likewise, the Board of Immigration Appeals ("BIA") has long held that physical presence in the United States pursuant to specific programs—as opposed to physical presence after "admission" pursuant to an immigrant or nonimmigrant visa—does not render a noncitizen "admitted." *See, e.g.*, *Matter of V-X-*, 26 I. & N. Dec. 147, 150 (BIA 2013) (asylum); *Mater of Reza*, 25 I. & N. Dec. 296, 299 (BIA 2010) (Family Unity Program).

## II.     Plaintiff's Life in the United States and Mexico

30.     Plaintiff John Doe was born in Mexico in 1966.  He is married and has four children. His wife is a lawful permanent resident of the United States, and two of his children are United States citizens.

31.     Plaintiff's friends, family, and community members attest to his moral character, describing him as honest, kind, and hard-working.  He attends Our Lady of Loretto Catholic Church in Marin County.  He has no criminal record other than a 2001 misdemeanor conviction for driving under the influence.

32.     Plaintiff first came to the United States around 1986.  He lived in the United States for extended periods of time in the 1980s and 1990s, and returned to Mexico periodically to care for his parents, who are in poor health.

33.     On January 9, 2003, Plaintiff attempted to enter the United States to reunite with his wife and children after spending time in Mexico caring for his parents.  He was apprehended by the authorities and removed to Mexico.

34.     A few days later, Plaintiff entered the United States without inspection in order to reunite with his family.  At the time, he was the only provider for his wife and children, all of whom resided in California.  A few months later, in 2003, Plaintiff, his wife, and their children moved to Michoacán, Mexico, with the intent to permanently reside in their hometown of Uruapan.  While in

Uruapan, Plaintiff started a successful car-wash business.  He ultimately remained in Mexico for over a decade.

35.     In or around 2013, Plaintiff and members of his family began to receive death threats from the Knights Templar, the dangerous cartel that had taken control of Uruapan.  The cartel threatened to kidnap, torture, and kill Plaintiff and members of his family if he did not comply with their demands.

36.     In January 2014, Mexican police officers arrested Plaintiff's son and transferred him to the control of the Knights Templar.  The cartel held Plaintiff's son for two days and shot him in his stomach before releasing him.

37.     As a result of these threats against him and the attack on his son, Plaintiff and his family fled Mexico for the United States.  On June 26, 2014, he arrived at the port of entry at Otay Mesa, San Diego, presented himself to a U.S. border official, and sought asylum in the United States.  He did not claim or seek admission to the United States in any immigrant or nonimmigrant visa status.  He was detained in ICE custody for about a month.  During that time, an asylum officer found that Plaintiff had a credible fear that he would be persecuted or tortured if he were returned to Mexico.  *See* 8 U.S.C. § 1225(b)(1)(B).

38.     On August 22, 2014, the government granted Plaintiff humanitarian parole on the basis of his fear of persecution and for humanitarian reasons.  *See* 8 U.S.C. § 1182(d)(5)(A).  Once again, Plaintiff did not seek and was not granted admission into the United States in any immigrant or nonimmigrant visa status.

39.     After being paroled into the United States, Plaintiff relocated to the San Francisco Bay Area.  Plaintiff's U.S. citizen daughter filed a Petition for Alien Relative (Form I-130) on his behalf.  Plaintiff—represented by counsel—also applied for adjustment of status to lawful permanent resident (via Form I-485).  And he also applied to DHS for permission to reapply for admission to the United States under 8 U.S.C. § 1182(a)(9)(C)(ii) by filing Form I-212 (the "I-212 Application").  He paid the $585 filing fee for the I-212 Application to DHS.

40.     USCIS's San Francisco Field Office scheduled an interview to adjudicate Plaintiff's applications in January 2016, and he brought a hard copy of his I-212 Application with him to the

1  interview.  But when Plaintiff and his attorney arrived at the interview, the USCIS officer refused to

2  accept his I-212 Application.

3        41.    In March 2016, USCIS approved the I-130 Petition for Alien Relative filed by

4  Plaintiff's daughter, thus making a visa number immediately available for Plaintiff.  As a result, all

5  that was needed for Plaintiff to adjust status to LPR was for the agency to grant his I-212

6  Application for permission to reapply for admission and his I-485 application for adjustment of

7  status.

8  **III.    USCIS's Unlawful Denial of Plaintiff's Application**

9        42.    On October 27, 2016, however, Plaintiff received a letter from USCIS's San

10  Francisco Field Office (the "Field Office") denying his application for adjustment of status.  *See* Oct.

11  27, 2016 Decision (Ex. A).  The letter stated that Plaintiff was not eligible to obtain consent to

12  reapply for admission to the United States under Section 1182(a)(9)(C) because such consent was

13  available "only if the applicant is outside the United States."  The letter also erroneously stated that

14  Plaintiff was inadmissible under Section 1182(a)(9)(A), a separate provision of the INA that does

15  not apply to him.

16        43.    Through counsel, Plaintiff sought reconsideration of USCIS's erroneous decision.  As

17  part of that process, he resubmitted the I-212 Application that the agency had previously refused to

18  accept.

19        44.    In January 2017, USCIS agreed that the original decision should be "set aside" and

20  reopened Plaintiff's I-485 application.  *See* Jan. 10, 2017 Order (Ex. B).

21        45.    Over eighteen months later, on August 3, 2018, the Field Office issued an amended

22  decision again denying Plaintiff's application to adjust status and his application for permission to

23  reapply for admission.  *See* Aug. 3, 2018 Decision (Ex. C).  The Field Office agreed that Plaintiff

24  was not inadmissible under Section 1182(a)(9)(A), which the October 2016 letter erroneously cited.

25  But it again concluded that Plaintiff was ineligible to reapply for admission under Section

26  1182(a)(9)(C)(i)(I), although for a different reason—this time because he had supposedly "attempted

27  to be readmitted" when he sought asylum at the border in June 2014.  *Id.* at 2.

28

46.     Plaintiff sought to appeal the denial of his applications to the AAO by submitting the required forms and the $675 filing fee to the Field Office.  The Field Office accepted the forms and the filing fee, but later the same day mailed the forms and Plaintiff's money order back to him, explaining that it had "improperly accepted" his filing and directing him to send the forms and the filing fee to a USCIS "lockbox."

47.     Plaintiff then filed his appeal by mailing the required forms and the filing fee to the lockbox, as directed.  The agency accepted the appeal as timely filed.

48.     On February 27, 2019, the AAO issued a final decision in Plaintiff's case, again denying his applications.  *See* AAO Decision (Ex. D).  The AAO did not adopt the reasoning set out in the Field Office's amended decision (that Plaintiff "attempted to be readmitted" when he sought asylum at the border).  Instead, the AAO relied on the statement in "[t]he form instructions for Form I-212" that a noncitizen "may not file an application for consent to reapply" if he or she is "in the United States."  AAO Decision at 2.  The AAO thus reasoned that a Form I-212 "may not be filed by an applicant from within the United States and must be filed from abroad."  *Id.*

49.     The AAO cited no statutory text supporting its position.   Notably, Section 1182(a)(9)(C)(ii) requires only that a noncitizen must seek permission to reapply "prior to" his or her "attempt to be readmitted"—it nowhere states that an applicant's physical presence in the United States disqualifies him or her from seeking permission to reapply for admission. Although the AAO decision purported to acknowledge Plaintiff's "contentions on appeal that his entry into the United States with parole did not constitute an admission," its only response was to assert that "there is no provision allowing USCIS to adjudicate a Form I-212 … filed from within the United States."  AAO Decision at 3.  The AAO did not explain why Section 1182(a)(9)(C)(ii) was not sufficient authority in itself for USCIS to adjudicate his request.

## COUNT ONE

## USCIS'S DECISION IS CONTRARY TO LAW

### (Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

50.     The foregoing paragraphs are incorporated by reference as if set forth fully herein.

51.     Under the APA, "the reviewing court shall … hold unlawful and set aside agency action … found to be … not in accordance with law."  5 U.S.C. § 706(2)(A).

52.     USCIS's denial of Plaintiff's application for permission to reapply for admission to the United States is contrary to law.

53.     The INA does not provide that an application for permission to reapply for admission must be submitted from outside the United States; it provides that the application must be submitted prior to an "attempt to be readmitted."  8 U.S.C. § 1182(a)(9)(C)(ii).  The AAO identified no action Plaintiff took that constituted an "attempt to be readmitted," and thus erred in concluding that he was ineligible to apply.

54.     The AAO's decision identified no action that Plaintiff took that constituted an attempt to be readmitted.  Seeking asylum is not an "attempt to be readmitted," because, as the BIA has held, "[a] grant of asylum is not an 'admission' to the United States."  *V-X-*, 26 I. & N. Dec. at 150. Seeking and obtaining humanitarian parole is not "an attempt to be readmitted," because the INA expressly states that the grant of such parole likewise "shall not be regarded as an admission."  8 U.S.C. § 1182(d)(5)(A).  And physical presence in the United States pursuant to a grant of humanitarian parole is not an "attempt to be readmitted" either.  *See Matter of Patel*, 20 I. & N. Dec. 368, 370 (1991).  Plaintiff was thus eligible to seek consent to reapply for admission.

55.     Defendants' contrary interpretation violates the text and structure of the INA by imposing an additional nonstatutory requirement.  The statute requires only that an application for consent to reapply for admission must be submitted prior to an applicant's "attempt to be readmitted," 8 U.S.C. § 1182(a)(9)(C)(ii); the applicant's physical location is immaterial.

56.     Defendants' contrary interpretation also contravenes the Refugee Act and the Convention Against Torture, which together ensure that noncitizens with a well-founded fear of future persecution or torture do not have to remain in the countries they are attempting to flee. Under Defendants' policy, noncitizens in such a situation—as Plaintiff unquestionably is—would apparently have to remain in danger while their I-212 applications are processed, and would be penalized for receiving humanitarian parole.

57.     For these reasons and others, the Court should vacate USCIS's decision, enter an order declaring Plaintiff eligible to apply for consent to reapply for admission to the United States under § 1182(a)(9)(C)(ii), and direct Defendants to adjudicate his application on the merits without regard to his physical location.

## COUNT TWO

### USCIS'S DECISION IS ARBITRARY AND CAPRICIOUS

### (Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

58.     The foregoing paragraphs are incorporated by reference as if set forth fully herein.

59.     Under the APA, "the reviewing court shall … hold unlawful and set aside agency action … found to be … arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

60.     USCIS's denial of Plaintiff's application for permission to reapply for admission to the United States is arbitrary and capricious, is unsupported by substantial evidence, and constitutes unreasoned decisionmaking in multiple respects.

61.     For one, USCIS's decision fails to interpret or apply the text of Section 1182(a)(9)(C)(ii)—the governing statutory authority—instead simply citing the instructions for Form I-212, which do not carry force of law.

62.     For another, although USCIS purported to acknowledge Plaintiff's argument that "his entry into the United states with parole did not constitute an admission," AAO Decision at 3, it offered no response to that argument on the merits. Indeed, the AAO failed entirely to identify any action that Plaintiff took that, in its view, constituted an "attempt to be readmitted" into the United States.

63.     Furthermore, there is no rational basis for Defendants to treat Plaintiff differently from other unadmitted noncitizens otherwise eligible to seek consent to reapply for admission simply because of his physical location. If anything, people like Plaintiff who have already been granted humanitarian parole by the U.S. government are *more likely* to receive a grant of permission to reapply for admission than people who are outside the country and have not yet been evaluated by U.S. officials for any purpose. Defendants have pointed to no legitimate policy reason that would be served by requiring Plaintiff to leave the United States and resubmit his application from Mexico,

where a vicious cartel has stated its willingness and shown its ability to harm Plaintiff and his family, unhindered by any Mexican governmental authority.

64.     For these reasons and others, the Court should vacate USCIS's decision and direct Defendants to adjudicate Plaintiff's application on the merits without regard to his physical location.

**PRAYER FOR RELIEF**

65.     WHEREFORE, Plaintiff prays that the Court grant the following relief:

a.     Vacate, "hold unlawful," and "set aside" USCIS's decision, 5 U.S.C. § 706(2);

b.     Declare that USCIS's policy of denying I-212 applications submitted by persons paroled into the United States is contrary to law;

c.     Declare that Plaintiff is eligible to submit an application for permission to reapply for admission to the United States pursuant to Section 1182(a)(9)(C)(ii);

d.     Enter a declaration and an injunction ordering USCIS to immediately adjudicate Plaintiff's I-212 Application on the merits without regard to his physical location;

e.     Award Plaintiff his costs and reasonable attorney's fees in connection with this action, pursuant to 28 U.S.C. § 2412 and any other applicable authority; and

f.     Grant such other relief as the Court deems necessary, just, and proper.

DATED: July 3, 2019                          PANGEA LEGAL SERVICES

                                             By:    /s/  Marie A.J. Vincent
                                             MARIE A.J. VINCENT
                                             PANGEA LEGAL SERVICES
                                             350 Sansome St. #650
                                             San Francisco, CA  94104
                                             Telephone: (415) 635 7187

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALEX HEMMER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC  20006
Telephone: (202) 663 6000
Facsimile: (202) 663 6363

MARK C. FLEMING
WILMER CUTLER PICKERING HALE
   AND DORR LLP
60 State Street
Boston, MA  02109
Telephone: (617) 526 6000
Facsimile: (617) 526 5000

*Attorneys for Plaintiff*