UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN DOE,

              Plaintiff,

      v.

CHAD F. WOLF, et al.,

              Defendants.

Case No.  19-cv-03852-DMR

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 31, 33

Plaintiff John Doe filed this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. seeking to reverse the decision by the United States Citizenship and Immigration Services ("USCIS") denying his application for consent to reapply for admission to the United States.  Plaintiff now moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment to reverse the February 27, 2019 decision by USCIS's Administrative Appeals Office ("AAO") affirming the decision.  [Docket No. 31 (Pl.'s Mot.).]  Defendants Chad F. Wolf, Department of Homeland Security ("DHS"), Kenneth T. Cuccinelli, Richard Valeika, and USCIS cross-move for summary judgment to affirm the AAO's decision.  [Docket No. 33 (Defs.' Mot.).]  This matter is appropriate for determination without oral argument.  Civil L.R. 7-1(b).  For the following reasons, Plaintiff's motion is granted in part.  Defendants' motion is denied.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This case arises from USCIS's denial of Plaintiff's Form I-212 Application for Permission to Reapply for Admission into the United States After Deportation or Removal.  The court sets forth the governing statutory framework contained in the relevant provisions of the Immigration and Nationality Act ("INA"), as well as the undisputed facts underlying these cross-motions.

### A.     Admissibility of Noncitizens

In 1996, Congress amended the INA by enacting the Illegal Immigration Reform and

Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) ("IIRIRA").

"IIRIRA established 'admission' as the key concept in immigration law and defines the term as

'the lawful entry of the alien into the United States after inspection and authorization by an

immigration officer.'" *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 756 (9th Cir. 2018)

(quoting 8 U.S.C. § 1101(a)(13)(A)) (citing *Vartelas v. Holder*, 566 U.S. 257, 262 (2012)).  A

noncitizen seeking "admission" to the United States "cannot gain entry if she is deemed

'inadmissible' on any of the numerous grounds set out in the immigration statutes." *Vartelas*, 566

U.S. at 263 (citing 8 U.S.C. § 1182).  In particular, 8 U.S.C. § 1182(a) sets forth reasons why

noncitizens may be "ineligible to receive visas and ineligible to be admitted to the United States."

In relevant part, the statute provides that a noncitizen who "enters or attempts to enter the United

States without being admitted" after having been "unlawfully present in the United States for an

aggregate period of more than 1 year" or having "been ordered removed" from the country is

inadmissible.  8 U.S.C. § 1182(a)(9)(C)(i).  However, section 1182(a) includes an exception to

that basis for inadmissibility.  It states that the foregoing category of inadmissibility does not

apply under certain circumstances when the alien is seeking admission more than 10 years after

having last departed the United States:

> [§ 1182(a)(9)(C)(i)] shall not apply to an alien seeking admission
> more than 10 years after the date of the alien's last departure from the
> United States if, prior to the alien's reembarkation at a place outside
> the United States or attempt to be readmitted from a foreign
> contiguous territory, the Secretary of Homeland Security has
> consented to the alien's reapplying for admission.

8 U.S.C. § 1182(a)(9)(C)(ii).  Therefore, a noncitizen who is inadmissible under §

1182(a)(9)(C)(i) "may seek admission into the United States if: (1) he has been absent from the

United States more than ten years, and (2) he has received the consent of the Secretary of

Homeland Security to the application for readmission." *Gonzales v. Dep't of Homeland Security*,

508 F.3d 1227, 1231 (9th Cir. 2007) (citing 8 U.S.C. § 1182(a)(9)(C)(ii)).  "[P]ermission to

reapply [for admission] is sought by the filing of an I-212 form." *Id*. (citing 8 C.F.R. § 212.2).

1

2

3

4

5

6

7

8

9

10

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      Plaintiff's Life in the United States and Mexico**

Plaintiff John Doe was born in Mexico in 1966.  Administrative Record ("A.R.") 113.[1]

His wife is a lawful permanent resident of the United States and two of his four children are

United States citizens.  A.R. 104, 117-18,120, 122, 124.

In 1986, Plaintiff entered the United States without inspection and settled in California.

A.R. 104, 469.  Between 1986 and 1996, Plaintiff traveled between Mexico and the United States

several times, each time entering the United States without inspection.  A.R. 469.  In 2002,

Plaintiff left the United States to visit his parents in Mexico.  When he attempted to return to

United States in January 2003, U.S. Customs & Border Protection ("CBP") apprehended him.  He

was detained and subsequently removed from the United States.  A.R. 469, 606-09.  Following his

removal, Plaintiff re-entered the United States without inspection in January 2003.  A.R. 469.

Plaintiff's January 2003 re-entry without inspection rendered him inadmissible under 8 U.S.C. §

1182(a)(9)(C)(i).  As noted, that provision states that a noncitizen who "enters or attempts to enter

the United States without being admitted" after having been "unlawfully present in the United

States for an aggregate period of more than 1 year" or having "been ordered removed" from the

country is inadmissible.  8 U.S.C. § 1182(a)(9)(C)(i).

Later in 2003, Plaintiff and his wife decided to leave California and move back to Mexico

to be close to their families.  A.R. 106, 469.  They moved to Uruapan in the state of Michoacán,

Plaintiff's hometown, where Plaintiff started a business.  A.R. 106.  After his 2003 return to

Mexico, Plaintiff remained in Mexico for over ten years.  A.R. 469.

**C.      Plaintiff's 2014 Return to the United States and Request for Asylum**

According to Plaintiff, at some point after his return to Mexico, a violent group known as

*Caballeros Templarios* or "Knights Templar" took control over Uruapan and imposed taxes on the

local businesses, including Plaintiff's.  A.R. 107-08.  In 2014, Knights Templar detained

Plaintiff's son for two days.  They beat and shot him before releasing him.  A.R. 108.  Later that

---

[1] The court granted Plaintiff leave to proceed under a pseudonym in this action due to his fear of
persecution if his name were publicly revealed.  [Docket No. 11.]  The court also granted
Defendants leave to file the administrative record under seal as it contains information that
identifies Plaintiff.  [Docket Nos. 28-3 (A.R.), 30 (Order).]

year, Plaintiff became unable to pay the tax to Knights Templar.  After missing a payment, armed

men visited his business and threatened to kill him and his family if he did not pay.  Afraid that he

would be killed, Plaintiff left Michoacán with his wife and children the following day.  A.R. 108.

Plaintiff arrived with his family at the Otay Mesa port of entry in San Diego, California on

June 26, 2014.  He presented himself to a CBP officer and requested asylum in the United States.

A.R. 469, 592-94.  Plaintiff was presumed inadmissible to the United States, served with a Notice

and Order of Expedited Removal from the United States, and detained pending an interview by an

asylum officer.  A.R. 570-73, 575-76, 592-94, 597-99.  An asylum officer interviewed Plaintiff in

July 2014 and found that he had a credible fear of torture.  A.R. 550-69.  Thereafter, Plaintiff's

order of expedited removal was vacated and he was ordered to appear before an immigration

judge.  A.R. 548-49.  On August 22, 2014, CBP released Plaintiff from detention and paroled him

into the United States until August 22, 2015 pursuant to 8 C.F.R. § 212.5, which authorizes parole

"on a case-by-case basis for 'urgent humanitarian reasons' or 'significant public benefit.'"  A.R.

115, 484; 8 C.F.R. § 212.5(b).  The statute under which Plaintiff received parole expressly states

that parole under such circumstances "shall not be regarded as an admission of the alien" to the

United States, 8 U.S.C. § 1182(d)(5)(A), and Plaintiff's parole document states that it is "not valid

for employment nor entry into the U.S.A."  A.R. 115, 484.

### D.    Plaintiff's Form I-485 and Form I-212 Applications

After being paroled into the United States, Plaintiff relocated to the San Francisco Bay

Area.[2]  In June 2015, Plaintiff's U.S. citizen daughter filed a Form I-130 Petition for Alien

Relative on his behalf and Plaintiff filed a Form I-485 Application to Register Permanent

Residence or Adjust Status to become a lawful permanent resident (the "I-485 application").  A.R.

457-63, 476, 477.  Plaintiff also filed a Form I-212 Application for Permission to Reapply for

Admission Into the United States After Deportation or Removal (the "I-212 application"), seeking

consent to reapply for admission under the exception to inadmissibility found in 8 U.S.C. §

---

[2] Plaintiff later filed an Application for Asylum and for Withholding of Removal, which was
administratively closed in 2015 at his request.  A.R. 471, 473-75, 533-45.

1182(a)(9)(C)(ii).  A.R. 70-71.  In his I-212 Application, Plaintiff acknowledged the following bases for his inadmissibility: "I entered or attempted to enter the United States without being admitted or paroled after having been removed (INA section 212(a)(9)(C)(i)(I))" and "I entered or attempted to enter the United States without being admitted or paroled after having been unlawfully present in the United States for a period of more than 1 year, in the aggregate (INA section 212(a)(9)(c)(i)(I))."  A.R. 71.

USCIS approved Plaintiff's daughter's I-130 Petition in March 2016.  A.R. 417.  In October 2016, USCIS denied Plaintiff's I-485 application to adjust status.  A.R. 432-33.  In its decision, USCIS stated that Plaintiff was ineligible to adjust his status because he was inadmissible under 8 U.S.C. § 1182(a)(9)(C).  It further stated that Plaintiff could not seek consent to reapply for admission under section 1182(a)(9)(C) because "consent to reapply . . . is available only if the applicant *is outside the United States*, and only after the applicant has been abroad for at least 10 years."  A.R. 433 (emphasis added).[3]  Plaintiff moved to reopen and to reconsider the decision.  A.R. 82-85.  On January 10, 2017, USCIS granted Plaintiff's motion, set aside the denial of the I-485 application, and placed the application "in a pending status for further review."  A.R. 69.

On August 3, 2018, USCIS denied Plaintiff's I-212 application and also denied his I-485 application for the second time.  A.R. 47-50 (I-212 denial), 60-68 (I-485 denial).  USCIS's denial of the I-212 application rested on its conclusion that Plaintiff was not eligible to file the application while he was physically present in the United States:

> [O]ne cannot obtain consent to reapply [for admission] . . . after returning to the United States, whether one physically entered the United States by being inspected and admitted, by being paroled, or by entering without inspection; the request for readmission must be made prior to any attempt to enter the United States.

A.R. 49.  USCIS denied Plaintiff's I-485 application due to his ineligibility to file a Form I-212 to seek consent to reapply for admission.  A.R. 61.

---

[3] USCIS also stated that Plaintiff was inadmissible under 8 U.S.C. § 1182(a)(9)(A), a separate provision of the INA that USCIS later conceded does not apply to Plaintiff.  A.R. 52, 432-33.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### E.     The AAO's February 27, 2019 Decision

Plaintiff appealed the denial of his I-212 application to USCIS's AAO.  A.R. 12-16.  The AAO dismissed his appeal in a decision issued on February 27, 2019.  A.R. 3-7.  It noted that "the sole issue is whether [Plaintiff] is eligible to file a Form I-212, Application for Permission to Reapply for Admission, *after* he has been paroled into the United States."  A.R. 5 (emphasis in original).  It answered this question in the negative, concluding that Plaintiff "is ineligible to apply for permission to reapply for admission under section 212(a)(9)(C)(ii) of the [Immigration and Nationality] Act [8 U.S.C. § 1182(a)(9)(C)(ii)] in the United States and must file his application from abroad."  A.R. 5.  The AAO stated its reasoning as follows: "[e]very application form . . . must be submitted to USCIS and executed in accordance with the form instructions, which have the weight of regulations," citing 8 C.F.R. § 103.2(a)(1).  A.R. 5.  In turn, 8 C.F.R. § 103.2(a)(1) states in relevant part that "[e]very form, benefit request, or other document must be submitted to DHS and executed in accordance with the form instructions regardless of a provision of 8 CFR chapter I to the contrary.  The form's instructions are hereby incorporated into the regulations requiring its submission."

According to the AAO, "[t]he form instructions for Form I-212 state, 'you may not file an application for consent to reapply if you are inadmissible under INA section 212(a)(9)(C) and . . . [y]ou are in the United States.'"  A.R. 5.  Additionally, the AAO cited 8 C.F.R. § 103.2(a)(6) which states, "[a]ll benefit requests must be filed in accordance with the form instructions."  A.R. 5.  Accordingly, the AAO concluded that "a Form I-212 requesting permission to reapply for admission under section 212(a)(9)(C)(ii) of the Act may not be filed by an applicant from within the United States and must be filed from abroad."  A.R. 5.  The AAO's decision does not address the legal basis for the instructions on the form.

The AAO acknowledged that Plaintiff's "entry into the United States with parole did not constitute an admission, and that individuals seeking asylum should not be punished from seeking humanitarian protection at a port of entry[.]"  A.R. 6; *see* A.R. 17-42 (Pl.'s Brief in Support of Appeal).  However, it concluded that "there is no provision allowing USCIS to adjudicate a Form I-212 requesting permission to reapply under section 212(a)(9)(C)(ii) of the Act filed from within

the United States."  A.R. 6.  The AAO noted the existence of 8 C.F.R. § 212.2, a regulation that it

described as "allow[ing] foreign nationals inadmissible under section 212(a)(9)(A) of the Act who

are inside the United States and applying for adjustment of status to be granted retroactive

permission to reapply for admission," but stated that the Board of Immigration Appeals ("BIA")

"found that this regulation was not promulgated to implement section 212(a)(9)(C) of the Act" in

*Matter of Torres-Garcia*, 23 I. & N. Dec. 866 (BIA 2006).  A.R. 6 (citing 8 C.F.R. § 212.2(e) and

(1)).  Finally, it noted that in *Gonzales*, 508 F.3d at 1242, the Ninth Circuit had deferred to the

BIA's interpretation of 8 C.F.R. § 212.2 in *Torres-Garcia*, and stated, "The alien is bound by

subsection (a)(9)(C)(ii), requiring that he obtain permission to apply for readmission from outside

the United States after ten years have lapsed from the date of his last departure."  A.R. 6 (quoting

*Gonzales*, 508 F.3d at 1242).

Plaintiff filed this lawsuit on July 3, 2019, challenging the AAO's February 27, 2019

decision under the APA.

## II.     LEGAL STANDARDS

Plaintiff contends that the AAO's February 27, 2019 decision is both "not in accordance

with law" and arbitrary and capricious under the APA, 5 U.S.C. § 706(2)(A).  That provision

states that a reviewing court "shall . . . hold unlawful and set aside agency action, findings, and

conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law . . ."

In this case, whether the AAO's decision is "not in accordance with law" "is a question of

statutory interpretation, rather than an assessment of reasonableness."  *See Singh v. Clinton*, 618

F.3d 1085, 1088 (9th Cir. 2010) (reviewing an APA challenge to the State Department's

termination of a visa based on its failure to follow the INA and its own regulations).  An agency's

interpretation or application of a statute is a question of law subject to de novo review, *Snoqualmie

Indian Tribe v. F.E.R.C.*, 545 F.3d 1207, 1212 (9th Cir. 2008), and "[a]gency action is 'not in

accordance with the law' when it is in conflict with the language of the statute relied upon by the

agency."  *Nw. Envtl. Advocates v. U.S. E.P.A.*, 537 F.3d 1006, 1014 (9th Cir. 2008) (quoting

*Cleveland v. Ohio*, 508 F.3d 827, 838 (6th Cir. 2007)).  Courts reviewing an agency's statutory

United States District Court
Northern District of California

7

interpretation under the "not in accordance with law standard" apply the two-step framework

established in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984).

*Nw. Envtl. Advocates*, 537 F.3d at 1014.  "If the statute is ambiguous, the agency's decision is

entitled to *Chevron* deference if it has the force of law."  *High Sierra Hikers Ass'n v. Blackwell*,

390 F.3d 630, 638 (9th Cir. 2004); *see also Snoqualmie Indian Tribe*, 545 F.3d at 1212-13 (citing

*Chevron*, 467 U.S. at 843).  "Deference in accordance with *Chevron*, however, is warranted only

'when it appears that Congress delegated authority to the agency generally to make rules carrying

the force of law, and that the agency interpretation claiming deference was promulgated in the

exercise of that authority.'"  *Gonzales v. Oregon*, 546 U.S. 243, 255-56 (2006) (quoting *United

States v. Mead Corp.*, 533 U.S. 218, 226-227 (2001)).  "Otherwise, the interpretation is 'entitled to

respect' only to the extent it has the 'power to persuade.'"  *Id.* (quoting *Skidmore v. Swift & Co.*,

323 U.S. 134, 140 (1944)); *see also High Sierra*, 390 F.3d at 638-39 ("If the decision does not

have the force of law, it is reviewed with 'respect' according to the factors set out in *Mead* and

*Skidmore*." (citation omitted)).

Review under the APA's arbitrary and capricious standard is deferential.  *Nat'l Ass'n of

Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007).  In such cases, a district court's role

is not fact-finding.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir.

1994).  "[T]he function of the district court is to determine whether or not as a matter of law the

evidence in the administrative record permitted the agency to make the decision it did."

*Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985).  A court should not vacate an

agency's decision unless it has "relied on factors which Congress had not intended it to consider,

entirely failed to consider an important aspect of the problem, offered an explanation for its

decision that runs counter to the evidence before the agency, or is so implausible that it could not

be ascribed to a difference in view or the product of agency expertise."  *Nat'l Ass'n of Home

Builders*, 551 U.S. at 658 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.

Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Finally, "[i]t is well-established that an agency's action must be upheld, if at all, on the

basis articulated by the agency itself."  *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 50; *see also Sec. &*

1    *Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an

2    administrative order must be judged are those upon which the record discloses its action was

3    based.").  Courts may not "supply a reasoned basis for the agency's action that the agency itself

4    has not given," but may "uphold a decision of less than ideal clarity if the agency's path may

5    reasonably be discerned."  *Bowman Transp., Inc. v. Ark.-Best Freight Sys.*, 419 U.S. 281, 285-86

6    (1974) (citations omitted).

7    **III.    DISCUSSION**

8           Plaintiff makes two arguments in support of his contention that the court should set aside

9    the AAO's February 27, 2019 decision finding him ineligible to apply for permission to reapply

10   for admission because he is currently located in the United States.  First, he argues that the

11   decision is "contrary to law" because USCIS "inexplicably and unjustifiably engrafted" a

12   physical-presence requirement onto 8 U.S.C. § 1182(a)(9)(C)(ii).  Pl.'s Mot. 7.  Second, Plaintiff

13   argues that the decision is arbitrary and capricious because the agency failed to provide a reasoned

14   explanation for its decision.  *Id*. at 15-16.  In response, Defendants assert that the AAO's decision

15   is consistent with section 1182(a)(9)(C)(ii) and is not arbitrary and capricious.

16          As noted, a noncitizen is inadmissible if he or she "enters or attempts to enter the United

17   States without being admitted" after having been "unlawfully present in the United States for an

18   aggregate period of more than 1 year" or having "been ordered removed" from the country.  8

19   U.S.C. § 1182(a)(9)(C)(i).  However, a noncitizen's prior removal or period of unlawful presence

20   does not stand as a permanent bar to admissibility if that person has been absent from the United

21   States for more than 10 years:

22                  [Section 1182(a)(9)(C)(i)] shall not apply to an alien seeking
                    admission more than 10 years after the date of the alien's last
23                  departure from the United States if, prior to the alien's . . . attempt to
                    be readmitted from a foreign contiguous territory, the Secretary of
24                  Homeland Security has consented to the alien's reapplying for
                    admission.
25

26   8 U.S.C. § 1182(a)(9)(C)(ii).[4]

27   ───────────────────

28   [4] The statute also provides that a noncitizen must seek consent to reapply for admission prior to his
     or her "reembarkation at a place outside the United States . . ."  8 U.S.C. § 1182(a)(9)(C)(ii).
     Defendants do not contend that the reembarkation provision applies in this case.  Defs.' Mot. 12;

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

The parties agree that Plaintiff is inadmissible under section 1182(a)(9)(C)(i).  They also agree that he meets the first of two requirements for falling within the exception to inadmissibility; it is undisputed that Plaintiff was absent from the United States for more than ten years prior to his current attempt to be admitted.  *See* A.R. 5 ("The record shows the Applicant then resided in Mexico for more than 10 years.").  At issue is Plaintiff's ability to satisfy the second requirement of the exception; that is, whether he can obtain the Secretary of Homeland Security's consent to reapply for admission "prior to [his] . . . attempt to be readmitted from a foreign contiguous territory[.]"  *See* 8 U.S.C. § 1182(a)(9)(C)(ii).  The AAO concluded that even though Plaintiff is eligible to seek consent to reapply for admission, "he may not do so from within the United States" and "must file his application from abroad."  A.R. 6.  In reaching this conclusion, the AAO relied on the instructions for Form I-212, which state "you may not file an application for consent to reapply if you are inadmissible under INA section 212(a)(9)(C) and . . . [y]ou are in the United States."  A.R. 5.  The AAO also noted the absence of a "provision allowing USCIS to adjudicate a Form I-212 . . . filed from within the United States."  A.R. 6.

Plaintiff argues that the AAO's decision is contrary to law because the statute does not impose a rule that bars a noncitizen from seeking consent to reapply for admission if he or she is physically present in the United States.  He asserts that requiring applicants to apply from outside the United States is at odds with the statute, which focuses on admission and not physical presence.  Section 1182(a)(9)(C)(ii) provides that a noncitizen must seek permission to reapply for admission before his or her "attempt to be readmitted from a foreign contiguous territory."  However, Plaintiff asserts that "*admission* to and *physical presence* in the United States are distinct concepts with distinct statutory meanings" under the INA.  Pl.'s Mot. 9 (emphasis in original).  According to Plaintiff, under the INA a noncitizen may be physically present in the United States without having sought admission or having been admitted, and the AAO's decision improperly conflates the two concepts.

Plaintiff makes two primary arguments to support his claim that the concepts of admission

*see also* Pl.'s Mot. 8 n.2.

United States District Court
Northern District of California

and physical presence are distinct.  First, he asserts that the INA defines the terms "admission" and "admitted" in a way that demonstrates that they mean something other than mere physical presence.  Under the INA, "admission" and "admitted" mean "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  As the Ninth Circuit has explained, Congress added this definition for a specific reason.  Prior to the IIRIRA, the INA distinguished noncitizens on the basis of "entry" instead of "admission."  Noncitizens who made an "entry" into the United States were subject to deportation proceedings, while those who had not were sent into exclusion proceedings.  *Hing Sum v. Holder*, 602 F.3d 1092, 1099-1100 (9th Cir. 2010) (citations omitted).  As a result, "non-citizens who had entered without inspection could take advantage of the greater procedural and substantive rights afforded in deportation proceedings, while non-citizens who presented themselves at a port of entry for inspection were subjected to more summary exclusion proceedings." *Id*. at 1100. "IIRIRA addressed this anomaly by substituting 'admission' for 'entry' and by replacing deportation and exclusion proceedings with a general 'removal' proceeding.  *Id*.  According to Plaintiff, the fact that Congress replaced "entry" with "admission" "reflects the settled understanding that admission and physical presence after entry are not synonymous."  Pl.'s Mot. 9 n.3.

Plaintiff also notes the existence of several provisions of the INA where immigration status or other benefit turns on physical presence, rather than admission.  For example, 8 U.S.C. § 1255(i)(1) allows a noncitizen who is "physically present in the United States" to apply for adjustment of his or her status to that of a lawful permanent resident.  Another provision, 8 U.S.C. § 1101(15)(T)(i)(II), makes a certain type of nonimmigrant visa available to noncitizens who are "physically present in the United States, American Samoa, or the Commonwealth of the Northern Mariana Islands, or at a port of entry thereto" due to human trafficking.  According to Plaintiff, these examples demonstrate that when Congress intended to condition an immigration status or benefit on physical presence rather than admission, "it said just that."  Pl.'s Mot. 9-10.

Second, Plaintiff argues that the INA plainly contemplates that a noncitizen may be physically present in the United States without having been admitted.  In particular, the statute

11

1  under which Plaintiff was paroled into the United States expressly states that parole "shall not be

2  regarded as an admission of the alien."  8 U.S.C. § 1182(d)(5)(A); *accord* 8 U.S.C. §

3  1101(a)(13)(B) ("[a]n alien who is paroled under section 1182(d)(5 of this title . . . shall not be

4  considered to have been admitted.").

5       Based on the foregoing, Plaintiff argues that physical presence is not synonymous with the

6  concept of "admission" under the INA.  Therefore, a noncitizen may be physically present in the

7  United States without having sought admission or having been admitted.  According to Plaintiff,

8  the AAO's decision that Plaintiff may not apply for permission to reapply for admission from

9  within the United States inappropriately merged the two concepts and was thus contrary to the

10  statute.

11       Defendants do not dispute Plaintiff's contentions that the terms "admission" and "physical

12  presence" are not synonymous under the INA, nor do they dispute that "parole is not admission."

13  Defs.' Mot. 10.  Instead, they argue that the AAO's decision finding Plaintiff ineligible to reapply

14  for admission from within the United States was not contrary to the statute for two reasons: 1)

15  Plaintiff was "an applicant for admission" at the time he presented himself at a port of entry in

16  June 2014, and thus was required to have filed the Form I-212 before that time; and 2) section

17  1182(a)(9)(C)(ii)'s reference to a noncitizen's "attempt to be readmitted from a foreign contiguous

18  territory" means that a Form I-212 must be filed from a foreign contiguous territory.  *Id*. at 10-12.

19       Notably, the AAO's decision did not rely on either of the arguments now raised by

20  Defendants.  Rather, the AAO concluded that Plaintiff is ineligible to file "from within the United

21  States" because the Form I-212 instructions require that the application be made from outside the

22  United States.  The AAO did not analyze or explain why or how the instructions are consistent

23  with the statute.  The AAO also stated that "there [was] no provision allowing USCIS to

24  adjudicate a Form I-212 . . . filed from within the United States," apparently referring to a lack of

25  a corresponding regulation, without analyzing whether section 1182(a)(9)(C)(ii) itself contains

26  such authority.  A.R. 5-6.  Defendants do not defend or discuss the AAO's reasoning in any detail

27  in their motion; instead they rest on entirely new reasons.

28       Defendants' positions thus suffer from a fatal flaw: they are being raised for the first time

in this lawsuit, and do not reflect the reasoning provided by the agency in the first instance. As

noted, "an agency's action must be upheld, if at all, on the basis articulated by the agency itself."

*Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 50; *see also Sec. & Exch. Comm'n v. Chenery Corp.*, 332

U.S. 194, 196 (1947) ("a reviewing court, in dealing with a determination or judgment which an

administrative agency alone is authorized to make, must judge the propriety of such action solely

by the grounds invoked by the agency."). This principle extends to questions of statutory

interpretation. For example, in *Department of Agriculture, Food & Nutrition Service, W. Region*

*v. Federal Labor Relations Authority*, 895 F.2d 1239, 1241 (9th Cir. 1990), the Ninth Circuit

granted a petition for rehearing and vacated a prior opinion and its mandate, explaining that in its

previous decision, it had upheld the ruling of the Federal Labor Relations Authority ("FLRA") on

a particular legal issue "on a rationale different from that relied upon by the [FLRA] itself," which

was improper. *Id*. at 1240. Further, the court noted, "and more important, [its] ruling decided a

question of statutory interpretation that had not been directly addressed by the [FLRA]." *Id*. at

1240-41. Accordingly, the Ninth Circuit remanded the matter to the FLRA to answer the statutory

interpretation question "in the first instance." *Id*. at 1241. *See also City of Kansas City, Mo. v.*

*Dep't of Hous. & Urban Dev.*, 923 F.2d 188, 192 (D.C. Cir. 1991) (concluding that agency's

statutory construction offered for the first time in litigation was not entitled to deference and

remanding to agency "for initial consideration" of the statutory question).

 The principle that "[a]n agency's decision can be upheld only on the basis of the reasoning

in that decision," *Snoqualmie Indian Tribe*, 545 F.3d at 1212, applies in the context of

immigration law. *See, e.g., Recinos De Leon v. Gonzales*, 400 F.3d 1185, 1189 (9th Cir. 2005)

("We may affirm the [immigration judge] only on grounds set forth in the opinion under

review."); *Navas v. INS*, 217 F.3d 646, 658 n.16 (9th Cir. 2000) ("this court cannot affirm the BIA

on a ground upon which it did not rely."); *Pacheco v. INS*, 5 Fed. Appx. 633, 635 (9th Cir. 2001)

(while finding that the INS's argument on appeal was "correct," vacating the BIA's decision

because the court "cannot review the BIA's decision on any basis other than that expressly relied

on by the agency" (citing *Chenery*, 318 U.S. at 87 and *Dep't of Agric*., 895 F.2d at 1240-41)).

Here, Defendants offer no authority permitting the court to affirm the AAO's decision on grounds

1    not invoked by the agency.  Accordingly, the court declines to consider Defendants' post hoc

2    rationalizations for the AAO's decision which are being offered for the first time in this litigation.

3          Aside from Defendants' new justifications offered to bolster the AAO's decision, the only

4    other argument they make to support their contention that the AAO's decision is not contrary to

5    the statute is a request for deference to that decision.  According to Defendants, if the court

6    determines that the statute is ambiguous, it should find that USCIS's interpretation is persuasive

7    under *Mead* and *Skidmore* and accord it deference because it "is thorough, well-reasoned, and

8    consistent with precedential decisions from the Ninth Circuit and Board of Immigration Appeals."

9    Defs.' Mot. 13.

10         As noted, *Chevron* deference to an agency's interpretation "is warranted only 'when it

11   appears that Congress delegated authority to the agency generally to make rules carrying the force

12   of law, and that the agency interpretation claiming deference was promulgated in the exercise of

13   that authority.'"  *Gonzales*, 546 U.S. at 255-56 (quoting *Mead*, 533 U.S. at 226-227).  Otherwise,

14   the agency's interpretation "is reviewed with 'respect' according to the factors set out in *Mead* and

15   *Skidmore*."  *High Sierra*, 390 F.3d at 638-39.  In *Mead*, the Supreme Court held that "agencies

16   charged with applying a statute necessarily make all sorts of interpretive choices, and while not all

17   of those choices bind judges to follow them, they certainly may influence courts facing questions

18   the agencies have already answered."  533 U.S. at 227.  Under *Skidmore*, the degree to which a

19   court defers to an agency's opinion or interpretation "will depend upon the thoroughness evident

20   in its consideration, the validity of its reasoning, its consistency with earlier and later

21   pronouncements, and all those factors which give it power to persuade, if lacking power to

22   control."  *Skidmore*, 323 U.S. at 140; *see also Mead*, 533 U.S. at 227 ("courts have looked to the

23   degree of an agency's care, its consistency, formality, and relative expertness, and to the

24   persuasiveness of the agency's position." (citations omitted)).

25         The court finds that deference to the AAO's decision is unwarranted.  First and foremost,

26   Defendants do not identify any ambiguity in the statute in question that would necessitate the

27   court's consideration of the persuasiveness of the agency's interpretation.  Section

28   1182(a)(9)(C)(ii) permits an otherwise inadmissible noncitizen to seek the Secretary of Homeland

United States District Court
Northern District of California

14

1    Security's consent to reapply for admission if he or she does so before "attempt[ing] to be

2    readmitted from a foreign contiguous territory."  It does not state that such a noncitizen must seek

3    consent before he or she physically enters the United States.  Instead, the statute refers to

4    admission, which Defendants concede is distinct from physical presence after entry.  Therefore, by

5    its own terms, the statute does not impose a requirement that a noncitizen be physically outside the

6    country before attempting to be readmitted or seeking consent to reapply for admission.  The AAO

7    did not discuss the statutory language.  Instead, it grounded its decision on the form instructions

8    without engaging in any discussion or analysis of the instructions themselves and how they

9    embody a legitimate interpretation of the statute.  The AAO made a further conclusory statement

10   about the absence of a "provision allowing USCIS to adjudicate a Form I-212 . . . filed from

11   within the United States" without analyzing whether the statute itself constituted such authority.

12   A.R. 5-6.

13          Even if section 1182(a)(9)(C)(ii) contained an ambiguity, the AAO's decision is not the

14   type of consistent, formal, and persuasive explanation that would be entitled to deference under

15   *Mead* and *Skidmore*.  As set forth above, the decision is void of statutory analysis and falls far

16   short of the thorough and persuasive discussion that would support deference.  As to the decision's

17   "consistency with earlier and later pronouncements," *see Skidmore*, 323 U.S. at 140, Defendants

18   appear to rely on the BIA's decision in *Torres-Garcia* and the Ninth Circuit's opinion in

19   *Gonzales*, both of which the AAO cited in its decision.  However, those opinions are inapposite, as

20   they addressed a regulation that Plaintiff does not invoke in this case, 8 C.F.R. § 212.2.  *See* Pl.'s

21   Mot. 13.  In relevant part, 8 C.F.R. § 212.2 authorizes noncitizens who are present in the United

22   States to seek permission to apply for admission retroactively in conjunction with an application

23   for adjustment of status.  *See* 8 C.F.R. § 212.2(e), (i)(2).  *Torres-Garcia* and *Gonzales* addressed

24   whether 8 C.F.R. § 212.2 allows noncitizens who are unlawfully present in the United States and

25   inadmissible under section 1182(a)(9)(C)(i) to seek retroactive permission to reapply for

26   admission in conjunction with an application for adjustment of status.  *Torres-Garcia*, 23 I. & N.

27   Dec. at 873-74.  The BIA rejected that argument, concluding that the regulation "was not

28   promulgated" to implement section 1182(a)(9); instead, it was intended to implement a now-

United States District Court
Northern District of California

defunct section of the INA.  *Id.* at 874.  *Torres-Garcia* did not address the issue presented here; namely, whether section 1182(a)(9)(C)(ii) imposes a requirement that a noncitizen must be outside the United States in order to file an application for permission to reapply for admission.  In *Gonzales*, the Ninth Circuit concluded that *Torres-Garcia*'s interpretation of section 1182(a)(9)(C) and 8 C.F.R. § 212.2 was reasonable and entitled to deference under *Chevron*.  508 F.3d at 1239-42.  *Torres-Garcia* and *Gonzales* have little bearing on this case, as Plaintiff does not invoke 8 C.F.R. § 212.2.  *See* Pl.'s Mot. 13.

Defendants also appear to rely on a statement in *Gonzales* that section 1182(a)(9)(C)(ii) "require[s] that [a noncitizen] obtain permission to apply for readmission *from outside the United States*."  508 F.3d at 1242 (emphasis added).  *See* A.R. at 6.  As discussed, the issue in *Gonzales* was whether the statutory interpretation in *Torres-Garcia* was reasonable and entitled to *Chevron* deference.  Unlike Plaintiff, none of the plaintiffs in *Gonzales* had been paroled into the United States before attempting to be admitted,[5] and the Ninth Circuit did not analyze the question of whether section 1182(a)(9)(C)(ii) requires an applicant to be outside the United States when seeking permission to reapply for admission.  Its statement suggesting such a requirement is dicta.[6]  In sum, the court concludes that deference to the AAO's decision under *Skidmore* is not warranted.

The court concludes that the AAO's decision that Plaintiff was required to seek consent to file a Form I-212 "from abroad" is contrary to law.  As stated above, section 1182(a)(9)(C)(ii) permits an otherwise inadmissible noncitizen to seek the Secretary of Homeland Security's consent to reapply for admission if he does so before he "attempt[s] to be readmitted from a foreign contiguous territory."  It does not state that the noncitizen must seek consent before his or

---

[5] In *Gonzales*, the named plaintiffs were "seven Mexican citizens who ha[d] previously been deported or removed from the United States and ha[d] reentered without permission or detection."  509 F.3d at 1231.

[6] Defendants also cite *Carrillo de Palacios v. Holder*, 708 F.3d 1066, 1070 (9th Cir. 2013), in which the Ninth Circuit quoted its previous description of section 1182(a)(9)(c)(ii) from *Gonzales*. Like *Gonzales*, the *Carrillo de Palacios* decision does not analyze the question of whether the statute requires a noncitizen to seek permission to apply for readmission from outside the United States.

her physical entry into the United States.  The statute instead uses the term "admission," a concept that is distinct from physical presence after entry under the INA.  Therefore, by its own terms, the statute does not impose a requirement that a noncitizen be physically outside the country before attempting to be readmitted or seeking consent to reapply for admission.  The AAO thus violated the APA when it rejected Plaintiff's Form I-212 on the ground that he was required to file the application from outside the United States.  Because the court finds that USCIS violated the APA on this ground, it need not reach Plaintiff's remaining argument that the decision was "arbitrary and capricious."

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion is granted in part and denied in part.  The parties shall immediately meet and confer regarding a proposed judgment and shall submit a stipulated proposed judgment within 14 days of the date of this order.

**IT IS SO ORDERED.**

Dated: June 12, 2020



Donna M. Ryu
United States Magistrate Judge

17